# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN AIELLO, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>      v.<br><br>BLACK ROCK COFFEE BAR, INC., MARK D. DAVIS, RODDERICK F. BOOTH, JEFF HERNANDEZ, DANIEL BRAND, JAKE SPELLMEYER, BRYAN PEREBOOM, RICHARD FEDERICO, SARAH GOLDSMITH-GROVER, ANDREW BRAITHWAITE, KRISTINA CASHMA, J.P. MORGAN SECURITIES LLC, JEFFERIES LLC, MORGAN STANLEY & CO. LLC, ROBERT W. BAIRD & CO. INCORPORATED, STIFEL, NICOLAUS & COMPANY, INCORPORATED, WILLIAM BLAIR & COMPANY, L.L.C., RAYMOND JAMES & ASSOCIATES, INC.,<br><br>      Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Stephen Aiello ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Black Rock Coffee Bar, Inc. ("Black Rock Coffee" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Black Rock Coffee; and (c) review of other publicly available information concerning Black Rock Coffee.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Black Rock Coffee: (a) Class A common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's September 2025 initial public offering ("IPO" or the "Offering"); and/or (b) securities between September 12, 2025 and May 12, 2026, inclusive (the "Class Period"). Plaintiff pursues claims against under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2. Black Rock Coffee Bar, Inc. owns and operates a chain of drive-through coffee bars. The Company claimed its expansion strategy was tailored to build brand awareness with limited sales transfer, meaning little loss of sales due to new store openings, also known as cannibalization.

3. On September 15, 2025, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 16,911,764 shares of Class A common stock at a price of $20.00 per share. The Company received net

proceeds of approximately $306.5 million from the Offering. The proceeds from the IPO were purportedly to be used for purchasing newly issued LLC Units from Black Rock Coffee Holdings, LLC, purchasing LLC Units from the Company's sponsor, The Cynosure Group, LLC, and, to the extent there were remaining proceeds, for general corporate purposes.

4.      On May 12, 2026, after the market closed, Black Rock Coffee released its first quarter 2026 financial results, revealing a *same store growth rate of 5.2%, a four-point decline year-over-year* compared to a 9.2% rate in same quarter the prior year. The Company further reported revenue of $55.45 million, missing consensus estimates.

5.      In the accompanying earnings call held on the same date, the Company's Chief Executive Officer, Mark Davis ("Davis"), revealed that as the Company"grow[s] store density in these maturing markets and add[s] new locations around existing high-volume stores," it will "thoughtfully rebalanc[e] demand across [its] store base." He continued that "[t]his dynamic can result in some *sales transfer where a portion of volume from existing stores shifts to newer locations that have opened in closer proximity.*"[1] Davis further confirmed "sales transfer" had "impacted same-store sales in the quarter."

6.      On this news, Black Rock Coffee's stock price fell $3.32, or 30.3%, to close at $7.65 per share on May 13, 2026, on unusually heavy trading volume.

7.      By the commencement of this action, Black Rock Coffee stock has traded as low as $7.23 per share, a more than 63% decline from the $20 per share IPO price.

8.      In the Registration Statement and throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

disclose to investors: (1) Black Rock Coffee's new store openings were leading to a cannibalization of its existing services and revenue; (2) Black Rock Coffee overstated the manner in which its expansion strategy was tailored to avoid "sales transfer"; (3) as a result of "sales transfer," the Company's financial results were materially impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v) and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

13.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

14.     Plaintiff Stephen Aiello, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired Black Rock Coffee Class A common stock pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO and/or Black Rock Coffee securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant Black Rock Coffee is incorporated under the laws of Texas with its principal executive offices located in Scottsdale, Arizona. Black Rock Coffee's Class A common stock trades on the NASDAQ under the symbol "BRCB."

16.     Defendant Davis was, at all relevant times, the Chief Executive Officer ("CEO") and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17.     Defendant Rodderick F. Booth ("Booth") was, at all relevant times, the Chief Financial Officer ("CFO"), and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18.     Defendants Davis and Booth (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-

public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

19.    Defendant Jeff Hernandez ("Hernandez") is a director of the Company, is the Chairman of the Board, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.    Defendant Daniel Brand ("Brand") is a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC

21.    Defendant Jake Spellmeyer ("Spellmeyer") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22.    Defendant Bryan Pereboom ("Pereboom") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23.    Defendant Richard Federico ("Federico") is a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

24.    Defendant S. Sarah Goldsmith-Grover ("Grover") is a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

25.    Defendant Andrew Braithwaite ("Braithwaite") is a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

26.    Defendant Kristina Cashman ("Cashman") is a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

27. Defendants Hernandez, Brand, Spellmeyer, Pereboom, Federico, Grover, Braithwaite, and Cashman are collectively referred to hereinafter as the "Securities Act Individual Defendants."

28. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO. In the IPO, J.P. Morgan agreed to purchase 4,214,492 shares of the Company's common stock, exclusive of the over-allotment option.

29. Defendant Jefferies LLC ("Jefferies") served as an underwriter for the Company's IPO. In the IPO, Jefferies agreed to purchase 3,311,385 shares of the Company's common stock, exclusive of the over-allotment option.

30. Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as an underwriter for the Company's IPO. In the IPO, Morgan Stanley agreed to purchase 3,311,385 shares of the Company's common stock, exclusive of the over-allotment option.

31. Defendant Robert W. Baird & Co. Incorporated ("Baird") served as an underwriter for the Company's IPO. In the IPO, Baird agreed to purchase 1,505,175 shares of the Company's common stock, exclusive of the over-allotment option.

32. Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") served as an underwriter for the Company's IPO. In the IPO, Stifel agreed to purchase 1,050,420 shares of the Company's common stock, exclusive of the over-allotment option.

33. Defendant William Blair & Company, L.L.C. ("William Blair") served as an underwriter for the Company's IPO. In the IPO, William Blair agreed to purchase 1,050,420 shares of the Company's common stock, exclusive of the over-allotment option.

34.    Defendant Raymond James & Associates, Inc. ("Raymond James") served as an underwriter for the Company's IPO. In the IPO, Raymond James agreed to purchase 262,605 shares of the Company's common stock, exclusive of the over-allotment option.

35.    Defendants J.P. Morgan, Jefferies, Morgan Stanley, Baird, Stifel, William Blair, and Raymond James, are collectively referred to hereinafter as the "Underwriter Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

36.    Black Rock Coffee Bar, Inc. owns and operates a chain of drive-through coffee bars.

### The Company's False and/or Misleading
### Registration Statement and Prospectus

37.    On September 9, 2025, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective the on September 11, 2025.

38.    On  September 15, 2025, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 16,911,764 shares of Class A common stock at a price of $20.00 per share. The Company received net proceeds of approximately $306.5 million from the Offering. The proceeds from the IPO were purportedly to be used for purchasing newly issued LLC Units from Black Rock Coffee Holdings, LLC, purchasing LLC Units from the Company's sponsor, The Cynosure Group, LLC, and, to the extent there were remaining proceeds, for general corporate purposes.

39.    The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements

made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

40.    Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

41.    The Registration Statement stated that "Sales transfer between our stores **may** be significant in the future as we continue to expand our operations and could affect our revenue growth, which **could**, in turn, harm our business" stating in relevant part:

> **New stores, once opened, may not be profitable or may close, and the increases in average per store sales and comparable sales that we have experienced in the past may not be indicative of future results.**

> \*                          \*                          \*

> Additionally, opening new stores in existing markets may negatively impact sales at our existing stores, even if it increases overall AUV in a region over time. The consumer target area of our stores varies by location, depending on a number of factors, including population density, other local retail and business attractions, area demographics and geography. As a result, the opening of a new store in or near markets in which we already have stores could adversely impact sales at these existing stores while ultimately growing the overall AUV in a region. However, existing stores could also make it more difficult to build our consumer base for a new store in the same market. **Sales transfer between our stores may be significant in the future as we continue to expand our operations and could affect our revenue growth, which could, in turn, harm our business.**

42.    The Registration Statement stated that Black Rock Coffee "will focus our growth in existing markets where we believe there is an opportunity to **increase density with minimal sales transfe**r" to generate revenue. Specifically, it stated as follows, in relevant part:

> Existing Markets

> Our positive momentum and success of new openings confirms the significant demand for new Black Rock stores. We will focus our growth in existing markets where we believe there is an opportunity to **increase density with minimal sales transfe**r.

8

43.     The Registration Statement further stated that "***there is an opportunity to increase density in existing markets with minimal sales transfer***" as follows in relevant part:

***Focused Growth Within Existing Markets and Strategic New Market Entry***

Our expansion strategy is designed to balance near-term growth within our existing footprint with disciplined entry into new, high-potential markets. Our succession planning pipeline gives us confidence that we have the team in place to support ongoing expansion. ***We believe there is an opportunity to increase density in existing markets with minimal sales transfer*** and also believe there is upside in our brand awareness that will enable further growth of our AUVs in these markets. In addition, we intend to continue growing in our more established markets like Oregon and Washington and will responsibly build stores in additional cities within our existing states as we see opportunity to do so. Growth within existing geographies enables us to leverage our existing infrastructure and overhead, resulting in improved operating efficiency while also further driving brand awareness in those markets.

44.     The Registration Statement was materially false and misleading and omitted to state: (1) Black Rock Coffee's new store openings were leading to a cannibalization of its existing services and revenue; (2) Black Rock Coffee overstated the manner in which its expansion strategy was tailored to avoid "sales transfer"; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Materially False and Misleading**

**Statements Issued During the Class Period**

45.     The Class Period begins on September 12, 2025. On that day, Black Rock Coffee's common stock began publicly trading pursuant to the statements made in the Registration Statement, including the statements identified in ¶¶41-43.

46.      On November 11, 2025, Black Rock Coffee issued a press release announcing its financial results for the three and nine months ended September 30, 2025. The press release touted the Company's financial results, including its purportedly "strong revenue performance

underpinned by robust same store sales growth of 10.8% and 11 new store openings," as follows in relevant part:

> "Black Rock Coffee Bar delivered *exceptional third quarter results, with strong revenue performance underpinned by robust same store sales growth of 10.8% and 11 new store openings.* Our community-focused operating model is yielding strong results across the markets we operate in today, with our newest cohort exceeding sales expectations and store-level profit goals, while delivering healthy cash-on-cash returns, and outperforming the system on employee retention and guest satisfaction.["]
>
>         *                    *                    *
>
> **Third Quarter 2025 Highlights**
>
> •Opened 11 new stores in the third quarter of 2025
> •*Total Revenue of $51.5 million, up 24.2% compared to the prior year period*
> •*Same Store Sales increased 10.8% compared to the prior year period*
> •Income (Loss) from Operations of ($6.4) million as compared to $3.1 million in the prior year period
> •Store-Level Profit of $15.2 million as compared to $11.7 million in the prior year period

47.      On November 12, 2025, the Company filed a Form 8-K with the SEC, submitting as Exhibit 99.2, the transcript of the Company's conference call dated November 11, 2025, wherein Defendant Davis touted the Company's strategy drivers which "build awareness with limited sales transfer," stating as follows, in relevant part:

> As it relates to new unit growth, *we follow a disciplined, data-driven approach to site selection, focusing on high traffic suburban areas, and expanding outward from our proven markets in concentric circles. This strategy allows us to build awareness with limited sales transfer,* and ensure operational consistency, while also leveraging overhead effectively.

48.      On November 12, 2025, the Company submitted its quarterly report for the period ended September 30, 2025 on a Form 10-Q filed with the SEC, affirming the previously reported financial results, and reporting additional "key performance measures" including same store sales growth, and further touting the Company's purported strategy of expansion into "ample

whitespace" even in "existing markets." Specifically, the quarterly report stated as follows, in relevant part:

**Growth Strategies and Outlook**

With 169 stores as of September 30, 2025, we believe we are well-positioned to take advantage of significant growth opportunities due to our clear and consistent focus on creating authentic connections between baristas and guests, delivered through premium caffeinated beverages in modern, welcoming environments. We plan to expand our business by executing on the following growth strategies:

•*Expanding Our Store Footprint in New and Existing Markets* – We are in the early stages of our long-term growth journey, with significant whitespace in both existing and new markets. We have a robust pipeline for development to support future anticipated growth. We expect to open approximately 30 stores in 2025 and expect our future average annual store growth to be consistent with our approximately 20% historical average annual store growth from 2020 through 2024. We believe that we can achieve 1,000 stores by 2035, with ample whitespace in our existing markets to support this growth.

49.    On March 3, 2026, Black Rock Coffee issued a press release announcing its financial results for the three months and year ended December 31, 2025. The press release touted the Company's financial results, including its purportedly "exceptional same store sales growth and new store openings." Specifically the press release stated as follows, in relevant part:

"Black Rock Coffee Bar finished the year with strong momentum, delivering 25.3% revenue growth in the fourth quarter and 24.5% revenue growth for the full year, *fueled by our exceptional same store sales growth and new store openings.*["]

*                    *                    *

**Full Year 2025 Highlight**s

•*Opened 32 new stores during the period*
•Total revenue of $200.3 million, up 24.5%, compared to the prior year
•*Same Store Sales Growth increased 10.1% compared to the prior year*
•Income from operations of $0.9 million as compared to $6.0 million in the prior year. In 2025, income from operations margin was 0.4%
•*Store-Level Profit of $58.5 million as compared to $44.8 million in the prior year. In 2025, Store-Level Profit Margin was 29.2%*

11

50.    On  March 4, 2026, the Company submitted its annual report for the fiscal year ended December 31, 2025 on a Form 10-K filed with the SEC (the "FY25 10-K"). The FY25 10-K purported to warn of risks which "could" or "may" negatively impact the Company, including those related to "sales transfer" as follows, in relevant part:

> ***New stores, once opened, may not be profitable or may close, and the increases in average per store sales and comparable sales that we have experienced in the past may not be indicative of future results.***
>
> *        *        *
>
> As a result, the opening of a new store in or near markets in which we already have stores could adversely impact sales at these existing stores while ultimately growing the overall AUV in a region. However, existing stores could also make it more difficult to build our consumer base for a new store in the same market. Sales transfer between our stores may be significant in the future as we continue to expand our operations and could affect our revenue growth, which could, in turn, harm our business.

51.    The above statements identified in ¶¶45-50 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) Black Rock Coffee's new store openings were leading to a cannibalization of its existing services and revenue; (2) Black Rock Coffee overstated the manner in which its expansion strategy was tailored to avoid any "sales transfer"; (3) as a result of "sales transfer," the Company's financial results were materially impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

12

**The Subsequent Disclosures**

52.    On May 12, 2026, after the market closed, Black Rock Coffee released its first quarter 2026 financial results, revealing a *same store growth rate of 5.2%, a four point decline year over year* compared to a 9.2% rate in same quarter the prior year. The Company further reported revenue of $55.45 million, missing consensus estimates. Specifically, on that date, the Company issued a press release which stated as follows, in relevant part:

| | | Three Months Ended March 31, | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | 2026 | | 2025 | | Change |
| Total Stores (End of Period) | | 190 | | 154 | | 36 |
| Net New Store Openings | | 9 | | 5 | | 4 |
| Same Store Sales Growth[1] | | 5.2 % | | 9.2 % | | (4.0)% |
| Average Unit Volume | $ | 1,279 | $ | 1,203 | $ | 76 |
| Store revenue | $ | 55,384 | $ | 44,774 | $ | 10,610 |
| Income from operations[3] | $ | 2,676 | $ | 2,251 | $ | 425 |
| Income from operations margin[3] | | 4.8 % | | 5.0 % | | (0.2)% |
| Store-Level Profit[2] | $ | 16,389 | $ | 12,686 | $ | 3,703 |
| Store-Level Profit Margin[2] | | 29.6 % | | 28.3 % | | 1.3 % |
| Net income (loss)[3] | $ | 1,799 | $ | (884) | $ | 2,683 |
| Net income (loss) margin[3] | | 3.2 % | | (2.0)% | | 5.2 % |
| Adjusted EBITDA[2] | $ | 7,429 | $ | 6,017 | $ | 1,412 |
| Adjusted EBITDA Margin[2] | | 13.4 % | | 13.4 % | | — % |
| Total store operating weeks[4] | | 2,357 | | 1,944 | | 413 |

\*                    \*                    \*

| | | Three Months Ended March 31, | | |
| --- | --- | --- | --- | --- |
| | | 2026 | | 2025 |
| Store revenue | $ | 55,384 | $ | 44,774 |
| Other | | 70 | | 46 |
| Total revenue | | 55,454 | | 44,820 |

53.    In the accompanying earnings call held on the same date, Defendant Davis revealed that as the Company "grow[s] store density in these maturing markets and add[s] new locations around existing high-volume stores," it would "thoughtfully rebalanc[e] demand across [its] store base." He continued that "[t]his dynamic can result in some *sales transfer where a portion of volume from existing stores shifts to newer locations that have opened in closer proximity.*"

13

Davis further confirmed "sales transfer" had "impacted same-store sales in the quarter." Specifically, Davis stated as follows, in relevant part:

> ***As we grow store density in these maturing markets and add new locations around existing high-volume stores,*** we are thoughtfully rebalancing demand across our store base to enhance the experience, grow our presence, strengthen our market position and better serve our guests. ***This dynamic can result in some sales transfer where a portion of volume from existing stores shifts to newer locations that have opened in closer proximity.***
>
> In the first quarter, we saw this dynamic in Phoenix, creating a ***160 basis point headwind to same-store sales.***

54.    On this news, Black Rock Coffee's stock price fell $3.32, or 30.3%, to close at $7.65 per share on May 13, 2026, on unusually heavy trading volume.

55.    By the commencement of this action, Black Rock Coffee stock has traded as low as $7.23 per share, a more than 63% decline from the $20 per share IPO price.

## CLASS ACTION ALLEGATIONS

56.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Black Rock Coffee: (a) Class A common stock pursuant and/or traceable to the Company's false and/or misleading Registration Statement issued in connection with the Company's IPO; and/or (b) securities between September 12, 2025 and May 12, 2026, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

57.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least

14

hundreds or thousands of members in the proposed Class. The Company sold 16,911,764 shares of Class A common stock in the IPO. Moreover, record owners and other members of the Class may be identified from records maintained by Black Rock Coffee or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

58.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

59.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

60.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws was violated by Defendants' acts as alleged herein;

(b)    whether the Registration Statement, statements made by Defendants to the investing public in connection with the Company's IPO, and statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Black Rock Coffee; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

61.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

15

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

62.    The market for Black Rock Coffee's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Black Rock Coffee's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Black Rock Coffee's securities relying upon the integrity of the market price of the Company's securities and market information relating to Black Rock Coffee, and have been damaged thereby.

63.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Black Rock Coffee's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Black Rock Coffee's business, operations, and prospects as alleged herein.

64.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Black Rock Coffee's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the

16

Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

65.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

66.    During the Class Period, Plaintiff and the Class purchased Black Rock Coffee's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

67.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Black Rock Coffee, their control over, and/or receipt and/or modification of Black Rock Coffee's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Black Rock Coffee, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

## (FRAUD-ON-THE-MARKET DOCTRINE)

68.     The market for Black Rock Coffee's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Black Rock Coffee's securities traded at artificially inflated prices during the Class Period.  On September 18, 2025 the Company's share price closed at a Class Period high of $27.84 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Black Rock Coffee's securities and market information relating to Black Rock Coffee, and have been damaged thereby.

69.     During the Class Period, the artificial inflation of Black Rock Coffee's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Black Rock Coffee's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Black Rock Coffee and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

70.     At all relevant times, the market for Black Rock Coffee's securities was an efficient market for the following reasons, among others:

18

(a)   Black Rock Coffee shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)   As a regulated issuer, Black Rock Coffee filed periodic public reports with the SEC and/or the NASDAQ;

(c)   Black Rock Coffee regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)   Black Rock Coffee was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

71.   As a result of the foregoing, the market for Black Rock Coffee's securities promptly digested current information regarding Black Rock Coffee from all publicly available sources and reflected such information in Black Rock Coffee's share price. Under these circumstances, all purchasers of Black Rock Coffee's securities during the Class Period suffered similar injury through their purchase of Black Rock Coffee's securities at artificially inflated prices and a presumption of reliance applies.

72.   A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse

19

information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

73.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Black Rock Coffee who knew that the statement was false when made.

**FIRST CLAIM**

**Violation of Section 11 of the Securities Act**

**(Against All Defendants)**

74.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

75.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

76.    The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

77.    Black Rock Coffee is the registrant for the IPO.  The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

78.    As issuer of the shares, Black Rock Coffee is strictly liable to Plaintiff and the Class for the misstatements and omissions.

79.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

80.    By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

81.    Plaintiff acquired Black Rock Coffee shares pursuant and/or traceable to the Registration Statement for the IPO.

82.    Plaintiff and the Class have sustained damages.  The value of Black Rock Coffee Class A common stock has declined substantially subsequent to and due to the Defendants' violations.

21

**SECOND CLAIM**

**Violation of Section 15 of the Securities Act**

**(Against the Securities Act Individual Defendants)**

83. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

84. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

85. The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Black Rock Coffee within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause Black Rock Coffee to engage in the acts described herein.

86. The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

87. By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**THIRD CLAIM**

**Violation of Section 10(b) of The Exchange Act and**

**Rule 10b-5 Promulgated Thereunder**

**Against Black Rock Coffee and the Individual Defendants**

88. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

89. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

22

public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Black Rock Coffee's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

90.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Black Rock Coffee's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

91.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Black Rock Coffee's financial well-being and prospects, as specified herein.

92.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Black Rock Coffee's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Black Rock Coffee and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a

23

course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

93. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

94. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Black Rock Coffee's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless

24

in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

95.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Black Rock Coffee's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Black Rock Coffee's securities during the Class Period at artificially high prices and were damaged thereby.

96.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Black Rock Coffee was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Black Rock Coffee securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

97.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

98.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## FOURTH CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

99.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

100.   Individual Defendants acted as controlling persons of Black Rock Coffee within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

101.   In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

26

102.   As set forth above, Black Rock Coffee and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)   Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)   Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  June 18, 2026

**GLANCY PRONGAY WOLKE & ROTTER LLP**

By:    _/s/ Rebecca Dawson_

Rebecca Dawson
230 Park Ave, Suite 358
New York, New York 10169
Telephone: (213) 521-8007
Facsimile: (212) 884-0988
Email:  rdawson@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: clinehan@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

_Attorneys for Plaintiff Stephen Aiello_

28

## SWORN CERTIFICATION OF PLAINTIFF

## BLACK ROCK COFFEE BAR, INC. SECURITIES LITIGATION

I, Stephen Aiello, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of the Complaint on my behalf.

2. I did not purchase the Black Rock Coffee Bar, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this federal securities laws.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Black Rock Coffee Bar, Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class in any action under the federal securities laws (15 U.S. Code, Chapter 2B; and 15 U.S. Code, Chapter 2A, Subchapter I) during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

5/20/2026
_____
Date

_____
Stephen Aiello

**Stephen Aiello's Transactions in Black Rock Coffee Bar, Inc. (BRCB)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 4/20/2026 | Bought | 50 | $14.2000 |
| 4/20/2026 | Bought | 55 | $14.1200 |
| 4/20/2026 | Bought | 250 | $14.1000 |
| 4/20/2026 | Bought | 200 | $14.2800 |
| 4/21/2026 | Bought | 55 | $14.1300 |
| 4/21/2026 | Bought | 200 | $14.1000 |
| 4/21/2026 | Bought | 100 | $14.2000 |
| 4/21/2026 | Bought | 350 | $13.8500 |
| 4/21/2026 | Bought | 50 | $13.9400 |
| 4/21/2026 | Bought | 275 | $13.9500 |
| 4/21/2026 | Sold | -55 | $14.6000 |
| 4/21/2026 | Sold | -60 | $14.6500 |
| 4/21/2026 | Sold | -75 | $14.7000 |
| 4/22/2026 | Bought | 400 | $13.6500 |
| 4/22/2026 | Bought | 275 | $13.9200 |
| 4/23/2026 | Bought | 45 | $12.7800 |
| 4/23/2026 | Bought | 35 | $12.7900 |
| 4/23/2026 | Bought | 25 | $12.8000 |
| 4/23/2026 | Bought | 300 | $12.9500 |
| 4/23/2026 | Bought | 300 | $13.1600 |
| 4/23/2026 | Bought | 250 | $13.2500 |
| 4/23/2026 | Sold | -100 | $13.0000 |
| 4/24/2026 | Bought | 100 | $13.0700 |
| 4/24/2026 | Sold | -10 | $13.0200 |
| 4/24/2026 | Sold | -10 | $13.0500 |
| 4/24/2026 | Sold | -15 | $13.1000 |
| 4/24/2026 | Sold | -10 | $13.1000 |
| 4/24/2026 | Sold | -25 | $13.0800 |
| 4/24/2026 | Sold | -55 | $13.1500 |
| 4/24/2026 | Sold | -20 | $13.2100 |
| 4/24/2026 | Sold | -55 | $13.2000 |
| 4/24/2026 | Sold | -55 | $13.2500 |
| 4/24/2026 | Sold | -25 | $13.2000 |
| 4/24/2026 | Sold | -25 | $13.2400 |
| 4/27/2026 | Bought | 100 | $12.7000 |
| 4/27/2026 | Bought | 100 | $12.7500 |
| 4/27/2026 | Bought | 100 | $12.8000 |
| 4/27/2026 | Bought | 55 | $12.8000 |
| 4/27/2026 | Bought | 100 | $12.9000 |
| 4/27/2026 | Bought | 125 | $12.9500 |

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 4/27/2026 | Bought | 100 | $13.0000 |
| 4/27/2026 | Sold | -1 | $13.1500 |
| 4/27/2026 | Sold | -10 | $13.1000 |
| 4/27/2026 | Sold | -10 | $12.8500 |
| 4/27/2026 | Sold | -10 | $12.8700 |
| 4/27/2026 | Sold | -15 | $12.9000 |
| 4/28/2026 | Bought | 1 | $12.2800 |
| 4/28/2026 | Bought | 55 | $12.3000 |
| 4/28/2026 | Bought | 100 | $12.2300 |
| 4/28/2026 | Bought | 175 | $12.2900 |
| 4/28/2026 | Bought | 200 | $12.3600 |
| 4/28/2026 | Bought | 150 | $12.4800 |
| 4/28/2026 | Sold | -2 | $12.3200 |
| 4/28/2026 | Sold | -10 | $12.3000 |
| 4/28/2026 | Sold | -10 | $12.3500 |
| 4/28/2026 | Sold | -10 | $12.3600 |
| 4/28/2026 | Sold | -10 | $12.3700 |
| 4/28/2026 | Sold | -10 | $12.3800 |
| 4/28/2026 | Sold | -10 | $12.3900 |
| 4/28/2026 | Sold | -10 | $12.4500 |
| 4/28/2026 | Sold | -10 | $12.4600 |
| 4/28/2026 | Sold | -10 | $12.4700 |
| 4/28/2026 | Sold | -10 | $12.4800 |
| 4/28/2026 | Sold | -10 | $12.4900 |
| 4/29/2026 | Bought | 55 | $12.0600 |
| 4/29/2026 | Bought | 55 | $12.0700 |
| 4/29/2026 | Bought | 100 | $12.0600 |
| 4/29/2026 | Bought | 100 | $12.0700 |
| 4/29/2026 | Bought | 125 | $12.0500 |
| 4/29/2026 | Sold | -10 | $12.1300 |
| 4/29/2026 | Sold | -10 | $12.1400 |
| 4/29/2026 | Sold | -10 | $12.1500 |
| 4/29/2026 | Sold | -10 | $12.1600 |
| 4/29/2026 | Sold | -10 | $12.1700 |
| 4/29/2026 | Sold | -10 | $12.1800 |
| 4/29/2026 | Sold | -10 | $12.1900 |
| 4/29/2026 | Sold | -10 | $12.2000 |
| 4/29/2026 | Sold | -20 | $12.3300 |
| 4/29/2026 | Sold | -25 | $12.3000 |
| 4/29/2026 | Sold | -15 | $12.3100 |
| 4/29/2026 | Sold | -25 | $12.3200 |
| 4/29/2026 | Sold | -50 | $12.3000 |

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 4/30/2026 | Bought | 120 | $12.0700 |
| 4/30/2026 | Sold | -10 | $12.1800 |
| 4/30/2026 | Sold | -10 | $12.1900 |
| 4/30/2026 | Sold | -25 | $12.3100 |
| 4/30/2026 | Sold | -45 | $12.3500 |
| 4/30/2026 | Sold | -55 | $12.3500 |
| 4/30/2026 | Sold | -40 | $12.3700 |
| 4/30/2026 | Sold | -45 | $12.4000 |
| 4/30/2026 | Sold | -100 | $12.6000 |
| 5/1/2026 | Bought | 50 | $12.3100 |
| 5/1/2026 | Bought | 55 | $12.1500 |
| 5/1/2026 | Bought | 75 | $12.1500 |
| 5/1/2026 | Bought | 55 | $12.1900 |
| 5/1/2026 | Bought | 125 | $12.1600 |
| 5/1/2026 | Bought | 147 | $12.0700 |
| 5/1/2026 | Bought | 250 | $12.1400 |
| 5/1/2026 | Bought | 25 | $12.3200 |
| 5/1/2026 | Sold | -5 | $12.1900 |
| 5/1/2026 | Sold | -10 | $12.2700 |
| 5/1/2026 | Sold | -10 | $12.3600 |
| 5/1/2026 | Sold | -25 | $12.3600 |
| 5/1/2026 | Sold | -25 | $12.4800 |
| 5/1/2026 | Sold | -30 | $12.5200 |
| 5/1/2026 | Sold | -25 | $12.5300 |
| 5/1/2026 | Sold | -55 | $12.3500 |
| 5/1/2026 | Sold | -55 | $12.5000 |
| 5/1/2026 | Sold | -55 | $12.5500 |
| 5/1/2026 | Sold | -75 | $12.5500 |
| 5/1/2026 | Sold | -45 | $12.5800 |
| 5/1/2026 | Sold | -100 | $12.6000 |
| 5/4/2026 | Bought | 25 | $11.5700 |
| 5/4/2026 | Bought | 35 | $11.5500 |
| 5/4/2026 | Bought | 55 | $11.4700 |
| 5/4/2026 | Bought | 55 | $11.4800 |
| 5/4/2026 | Bought | 125 | $11.4500 |
| 5/4/2026 | Bought | 150 | $11.3700 |
| 5/4/2026 | Bought | 185 | $11.4000 |
| 5/4/2026 | Bought | 50 | $11.5400 |
| 5/4/2026 | Bought | 100 | $11.5000 |
| 5/4/2026 | Bought | 200 | $11.4800 |
| 5/4/2026 | Bought | 100 | $11.5500 |
| 5/4/2026 | Bought | 55 | $11.6200 |

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 5/4/2026 | Bought | 300 | $11.6000 |
| 5/4/2026 | Bought | 25 | $12.1600 |
| 5/4/2026 | Bought | 50 | $12.0200 |
| 5/4/2026 | Bought | 50 | $12.0600 |
| 5/4/2026 | Bought | 75 | $12.0500 |
| 5/4/2026 | Bought | 55 | $12.1000 |
| 5/4/2026 | Bought | 50 | $12.2600 |
| 5/4/2026 | Sold | -10 | $12.0800 |
| 5/4/2026 | Sold | -10 | $12.3200 |
| 5/4/2026 | Sold | -15 | $11.7000 |
| 5/4/2026 | Sold | -15 | $12.3700 |
| 5/4/2026 | Sold | -25 | $11.7500 |
| 5/4/2026 | Sold | -45 | $11.8000 |
| 5/5/2026 | Bought | 35 | $11.3400 |
| 5/5/2026 | Sold | -15 | $11.4900 |
| 5/5/2026 | Sold | -15 | $11.6000 |
| 5/5/2026 | Sold | -15 | $11.6300 |
| 5/5/2026 | Sold | -15 | $11.6400 |
| 5/5/2026 | Sold | -20 | $11.5500 |
| 5/5/2026 | Sold | -25 | $11.6500 |
| 5/5/2026 | Sold | -30 | $11.6400 |
| 5/5/2026 | Sold | -35 | $11.6800 |
| 5/5/2026 | Sold | -50 | $11.7000 |
| 5/5/2026 | Sold | -55 | $11.9400 |
| 5/5/2026 | Sold | -65 | $11.9800 |
| 5/5/2026 | Sold | -155 | $11.9500 |
| 5/5/2026 | Sold | -200 | $12.0000 |
| 5/5/2026 | Sold | -200 | $12.0800 |
| 5/5/2026 | Sold | -200 | $12.1500 |
| 5/5/2026 | Sold | -250 | $12.2100 |
| 5/5/2026 | Sold | -350 | $11.9000 |
| 5/5/2026 | Sold | -55 | $12.0800 |
| 5/5/2026 | Sold | -100 | $12.0900 |
| 5/6/2026 | Bought | 30 | $12.1000 |
| 5/6/2026 | Bought | 35 | $11.9600 |
| 5/6/2026 | Bought | 45 | $12.0600 |
| 5/6/2026 | Bought | 50 | $11.9600 |
| 5/6/2026 | Bought | 75 | $11.9300 |
| 5/6/2026 | Bought | 80 | $11.8900 |
| 5/6/2026 | Sold | -15 | $12.2400 |
| 5/6/2026 | Sold | -25 | $12.1600 |
| 5/6/2026 | Sold | -25 | $12.2400 |

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 5/6/2026 | Sold | -55 | $12.1500 |
| 5/6/2026 | Sold | -55 | $12.3200 |
| 5/6/2026 | Sold | -55 | $12.3800 |
| 5/6/2026 | Sold | -100 | $12.3000 |
| 5/6/2026 | Sold | -200 | $12.3500 |
| 5/7/2026 | Bought | 50 | $11.3300 |
| 5/7/2026 | Bought | 55 | $11.6200 |
| 5/7/2026 | Bought | 125 | $11.7200 |
| 5/7/2026 | Bought | 200 | $11.5500 |
| 5/7/2026 | Bought | 225 | $11.3500 |
| 5/7/2026 | Bought | 225 | $11.4700 |
| 5/7/2026 | Sold | -25 | $11.4500 |
| 5/7/2026 | Sold | -25 | $11.4900 |
| 5/7/2026 | Sold | -25 | $11.5000 |
| 5/7/2026 | Sold | -25 | $11.5700 |
| 5/7/2026 | Sold | -25 | $11.6300 |
| 5/7/2026 | Sold | -25 | $11.7000 |
| 5/8/2026 | Sold | -25 | $11.5700 |
| 5/8/2026 | Sold | -20 | $11.5600 |
| 5/8/2026 | Sold | -20 | $11.6000 |
| 5/8/2026 | Sold | -25 | $11.5200 |
| 5/8/2026 | Sold | -25 | $11.5300 |
| 5/8/2026 | Sold | -30 | $11.5800 |
| 5/8/2026 | Sold | -30 | $11.6100 |
| 5/11/2026 | Bought | 5 | $11.0000 |
| 5/11/2026 | Bought | 5 | $11.0500 |
| 5/11/2026 | Bought | 50 | $11.2500 |
| 5/11/2026 | Bought | 55 | $11.3400 |
| 5/11/2026 | Bought | 100 | $11.0600 |
| 5/11/2026 | Sold | -10 | $11.1200 |
| 5/11/2026 | Sold | -15 | $11.4400 |
| 5/12/2026 | Sold | -15 | $11.1100 |
| 5/12/2026 | Sold | -25 | $11.1300 |